AO108(2/90) Application for Seizure Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

One cardboard box containing
mutilated currency

**APPLICATION AND AFFIDAVIT
FOR SEIZURE WARRANT**

CASE NUMBER:

I, _____Joshua W. Delay_____ being duly sworn depose and say:

I am a(n) __Special Agent with the U.S. Department of Homeland Security__ and have reason to believe that within the jurisdiction of this Court there is now certain property that is subject to forfeiture to the United States, namely (describe the property to be seized)

> One cardboard box and all its contents, including mutilated currency estimated to be worth between $100,000 and $250,000, received in the mail by the U.S. Bureau of Engraving and Printing (BEP) on or about August 24, 2007, which is now is located in a vault at BEP's Examining and Redemption Section at 14th & C Streets, S.W., Washington, D.C. 20228.

which is/are (state one or more bases for seizure under the United States Code)

> property involved in violations of: (1) 31 U.S.C. § 5316, and subject to seizure and forfeiture pursuant to 31 U.S.C. § 5317(c)(2); (2) 18 U.S.C. § 1956(a)(a)(2) and § 1341, and subject to seizure and forfeiture under 18 U.S.C. § 981(a)(1)(A); (3) 31 U.S.C. § 5332, and subject to seizure and forfeiture, pursuant to 31U.S.C. § 5332(c).

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.     ☒ YES   ☐ NO

Barry Wiegand
Asset Forfeiture Unit, Criminal Division
(202) 307-0299

Signature of Affiant
Joshua W. Delay, Special Agent
U.S. Department of Homeland Security

Sworn to before me, and subscribed in my presence

_____
Date

at Washington, D.C.

_____
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Joshua W. Delay, am a special agent of the United States Department of Homeland Security's Immigration and Customs Enforcement (ICE) unit. After being duly sworn, I do hereby depose, aver, and state:

### I. AFFIDAVIT'S PURPOSE:

1. I submit this affidavit to apply for a warrant to seize a cardboard box and its contents, which are estimated to be between $100,000 and $250,000 worth of U.S. currency, much of it showing signs of physical deterioration, known as "mutilation." After being brought into the United States from Mexico, the cardboard box and it contents were sent by the U.S. mails on or about August 20, 2007, to the U.S. Treasury Department's Bureau of Engraving and Printing (BEP) and submitted for redemption through BEP's program to replace "mutilated" currency with new funds.

2. This card board box of "mutilated" currency now is in the official possession of an agency of the U.S. federal government, that is, BEP. The box and its contents are in a vault within BEP's Examining and Redemption Section at 14th & C Streets, S.W., Washington, D.C. 20228. They are being kept separate and distinct from any other item. I understand that there are no other similar items in this vault that might be seized by mistake under the warrant I seek. Examination of the "mutilated" currency in the cardboard box has shown it to be valued at between $100,00.00 and $250,000, but I am applying for a warrant to seize all of the currency in the cardboard box, the box itself, and any other contents, regardless of their precise amount or value. If this Court issues a warrant to seize this property, I personally shall execute it in the presence of BEP officers to ensure that the property identified in the warrant is the only property seized.

### II. SUMMARY:

3. This cardboard box and its contents, including the currency, whether mutilated or not,

may be seized because they are property subject to forfeiture to the United States government. As shown by the facts set forth more fully in the rest of this affidavit, this property is subject to forfeiture on each of at least three separate grounds. First, it was involved in a violation of the law at Title 31 of the U.S. Code, Section 5316, which requires a report to be made whenever a monetary instrument of more than $10,000 is transported into the United States from outside the United States. When the cardboard box of "mutilated" U.S. currency was brought into the United States from Mexico on or before August 20, 2007, no such report was filed. This subjects the property to forfeiture under 31 U.S.C. § 5317(c)(2). (The required report commonly is called a "CMIR" or FinCen 105 form). Second, the property was involved in a transaction or attempted transaction in violation of the federal money-laundering law codified at 18 U.S.C. § 1956(a)(a)(2). The property was brought into the United States from Mexico with the intent to promote a specified unlawful activity, that is, a mail fraud violation of 18 U.S.C. § 1341, by being submitted to the U.S. government falsely for redemption by BEP. This subjects the property to forfeiture under 18 U.S.C. § 981(a)(1)(A). Third, the property was involved in a violation of the law prohibiting bulk cash smuggling into the United States, 31 U.S.C. § 5332. Such property or plus property traceable to such a violation, is subject to civil forfeiture under § 5332(c). More detailed recitation of the laws requiring the CMIR report, money-laundering, frauds and swindles by mail, and bulk-cash smuggling, plus those authorizing seizure and forfeiture, are at the end of this affidavit.

### III. AFFIANT'S BACKGROUND:

4.   I have been a sworn ICE Special Agent since February 2007. Before that, I served for four years as a contract intelligence analyst with the U.S. Treasury Department's Internal Revenue Service Criminal Investigation Division, assigned to a money-laundering task force. I hold a bachelor's degree in government and international relations from George Mason University and

have completed the standard course in law-enforcement training at the Federal Law Enforcement Training Center in Glynco, Georgia.

5.	As an ICE special agent, my duties include investigating violations of federal laws on the export and import of monetary instruments and the registration of money-transmitting businesses, as well as violations of laws that make it a crime to structure transactions to evade reporting requirements or to engage in bulk-cash smuggling into or out of the United States.

6.	Because I make this affidavit to apply for a seizure warrant, I have not tried to include here all of the information known to law enforcement agents about the events described below. What I have set forth, I know from reading it in official documents, observing it personally, or speaking to other sworn law enforcement agents. In particular, I have received information from BEP criminal investigator Richard Hattauer.

### IV.  STATEMENT OF FACTS:

7.	The Bureau of Engraving and Printing is an agency of the U.S. Department of the Treasury. By law, BEP conducts a program to redeem "mutilated" U.S. currency, essentially taking in heavily damaged cash and replacing it with fresh money from government funds. According to an official BEP report:

> Mutilated currency is defined as currency notes which are either not clearly more than 50% of the original note or in a condition that the value is questionable and therefore special examination is required to determine the value. Mutilation can occur through interactions with fire, water, chemicals, and animals . . . . Badly soiled, limp, defaced, torn, or worn notes that are clearly more than 50% of the original note and do not require special examination are not considered mutilated currency and can be redeemed at any bank. [BEP] is allowed, under regulations by the Department of the Treasury, to exchange mutilated currency at face value as long as either more than 50% of a note identifiable as United States currency is present or 50% or less of a note identifiable as United States currency is present and the method of mutilation *and supporting evidence demonstrate to the satisfaction of the Treasury that the missing portions have been totally destroyed*. Mutilated currency may be mailed or brought personally to the BEP with a letter stating the estimated

value and the explanation of how the currency became mutilated. While each case is carefully examined by trained specialists, [BEP's Director] makes the final determination for the settlement of mutilated currency claims. [Emphasis in original.]

8. On about August 24, 2007, the U.S. Postal Service delivered to BEP's offices in Washington, D.C., a package, which had been sent by certified mail from El Paso, Texas. It was postmarked August 20, 2007. This package contained a cardboard box and its contents, apparently mutilated currency, which are the subject of my application for a seizure warrant.

9. Along with the package was a letter dated August 20, 2007, with a signature over the name Ruben Espinoza-Flores. Addressed to "Department of the Treasury, Bureau of Engraving and Printing Office of Currency Standards" in Washington, D.C., on the subject, "Re: mutilated currency," the letter stated in main part:

> My father, Lucas Espinoza, [] is seventy three years of age and an American citizen . . . . [A] couple of months ago, he informed my mother and I [*sic*] that he had saved some money . . . . He put his earnings in a metal box and buried it in the back yard of a home we own in CD. Juarez, Chihuahua Mexico. In August of 2006, El Paso Texas and CD Juarez suffered massive rains and many small suburbs were destroyed. Due to the rains our home in Mexico was flooded and covered with mud.
>
> Fortunately for us we were able to recover my father's metal box, but realizing that the money he had saved for more than thirty or forty years, had been damaged. As I removed the currency from the box, I set it aside to dry. I tried pulling it apart so I could deposit the money under my bank account, but the majority of it is full of mold, and starting to crumble, so I left it alone. I tried to deposit the bills I was able to separate, but was instructed to write a letter of explanation of why these bills are so mutilated and to mail it to you. Enclosed please find my father's money, along with this letter to see how much of this currency is replaceable.
>
> I truly hope that we could recuperate if not all at least some of my father's savings, if so, please send any reimbursement to: Ruben Espinoza-Flores [street address in El Paso, Texas, omitted].

10. Since August 29, 2007, BEP Investigator Richard Hattauer has examined the "mutilated" currency, which was mailed to BEP with the letter just quoted. In the rest of this

affidavit, I call it the "Espinoza" currency. Inv. Hattauer has found that the Espinoza currency consists of wads and banded bundles of various denominations of U.S. currency notes. Only a few of these notes could be removed from the wads or bundles without causing further damage. Because of the risk of mutilating the currency further, BEP only has estimated its value, rather than trying to determine a precise value by counting the individual notes. Inv. Hattauer has said that he examined more than 30 individual notes, which he was able to separate from the wads of bills without causing further damage to them. The very oldest of these notes was issued after 1995. Further, Inv. Hattauer has said that he also looked at the face of many other notes in the Espinoza currency, ones that could not individually be separated from the banded bundles of currency without risk of further mutilation. According to Inv. Hattauer, the face of each note contained a portrait of a person, which had been engraved in a style only used on notes issued after 1995, at the earliest. Thus, evidence that all of the notes examined were issued more recently than 13 years ago contradicts the Espinoza currency's cover letter, which refers to "money [Mr. Espinoza-Flores's father] had saved for more than thirty or forty years . . . ." According to Inv. Hattauer, these notes cannot have been saved for 30 or 40 years and cannot have been buried in a box in Mexico that long either. Therefore, the information about the Espinoza currency, which was given in the letter asking that BEP redeem the money, appears to be false. According to Inv. Hattauer, if BEP redeemed the Espinoza currency, the U.S. government would pay to a person the redeemed currency's estimated value of between $100,000 and $250,000.

      11.    I have investigated whether Mr. Ruben Espinoza-Flores or Mr. Lucas Espinoza, filed any written report with the U.S. Government regarding the currency, which Mr. Espinoza-Flores wrote was brought to the U.S. from Mexico sometime on or before August 20, 2007. I have found no record that any such report, that is a CMIR (or FinCEN 105 form), of transporting the Espinoza

currency into the U.S. from Mexico ever was made to the U.S. Government, as required by 31 U.S.C. § 5316.

12.     More specifically, I made a query of computerized records or "data bases," which various government agencies and police maintain. From this, I learned that Mr. Ruben Espinoza-Flores regularly has crossed the border between the United States and Mexico in or around El Paso, Texas, for a number of years, as often as several times a month. Additionally, I consulted a database called the "Currency Banking and Retrieval System (CBRS)." This system indicates when CMIRs (FinCEN 105 forms) have been filed. I learned that Mr. Ruben Espinoza-Flores has filed more than 40 such forms, but none more recently than March 2000. In particular, I could find no record that Mr. Ruben Espinoza-Flores had filed any such CMIR report after August 2006. This is the date in which the cover letter indicated the metal box of Espinoza currency had been damaged in Mexico during heavy rains and then brought to the United States. Similarly, there is no record of Mr. Ruben Espinoza-Flores filing a CMIR report for an amount similar to the value of the Espinoza currency.

### V.  **DETAILED CITATION OF GOVERNING STATUTES**:

13.     It is a felony crime when a person "transports, transmits, or transfers, or attempts to transport, transmit or transfer a monetary instrument or funds . . . to a place in the United States from or through a place outside the United States – with the intent to promote the carrying on of specified unlawful activity . . . ." 18 U.S.C. §1956(a)(2) (anti-money-laundering statute). A specified unlawful activity includes any act indictable under 18 U.S.C. § 1341 (relating to mail fraud). 18 U.S.C. §§ 1956(c)(7) & 1961(1)(B).

14.     The statute prohibiting frauds and swindles by mail, 18 U.S.C. § 1341, makes it a crime when a person who "having devised . . . any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses [or] representations . . . for the purpose

of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . or knowingly causes to be delivered by mail . . . according to the direction thereon . . . any such matter or thing . . . ." 18 U.S.C. § 1341.

15. Civil forfeiture is authorized of any "property, real or personal, involved in a transaction or attempted transaction in violation" of the anti-money-laundering statute in 18 U.S.C. § 1956, *inter alia*. 18 U.S.C. § 981(a)(1)(A). Property subject to forfeiture under § 981(a) "may be seized" and such seizures "shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure . . ." 18 U.S.C. § 981(b).

16. A person, his agent, or bailee who "transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time" to "a place in the United States from or through a place outside the United States" must make a report to the U.S. government about this action. 31 U.S.C. §§ 5316(a) & 5316(b). The code's definition of "monetary instruments" includes "United States coin and currency". 31 U.S.C. § 5312((a)(3)(A). "Any property involved in a violation" of 31 U.S.C. § 5316, "property involved in a conspiracy to commit any such violation," and "property traceable to any such violation or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases" in 18 U.S.C. § 981(a)(1)(A). See 31 U.S.C. § 5317(c)(2).

17. The part of the U.S. Code of Federal Regulations governing this subject, 31 C.F.R. § 103.23, requires a "Report of International Transportation of Currency or Monetary Instruments Reports" or "CMIR." which is to be filed with the U.S. Customs and Border Protection, Department of Homeland Security. This report is designated "FinCEN Form 105" (previously designated as a

CF-4790).

18.     It is a felony crime when a person "with the intent to evade a currency reporting requirement under 31 U.S.C. § 5316, knowingly conceals more than $10,000 in currency . . . in any conveyance, article of luggage, merchandise, or other container and transports . . . such currency . . . from a place outside the United States to a place within the United States . . ." 31 U.S.C. § 5332(a)(1) (Bulk-cash smuggling into or out of United States).  As a result, 31 U.S.C. § 5332(c)(1) authorizes the seizure and forfeiture of any property involved in, or traceable to, violations of, or a conspiracy to violate 31 U.S.C. § 5332(a).  "This seizure and forfeiture shall be governed by the procedures governing civil forfeitures in money laundering cases" in 18 U.S.C. § 981(a)(1)(A).  See 31 U.S.C. § 5332(c)(2).

19.     The federal regulations governing the exchange of mutilated paper currency appear at 31 C.F.R. § 100.5, *et seq*., which runs through 31 C.F.R. § 100.9

20.     Based upon the information recounted in this affidavit, I respectfully submit that there is probable cause to believe that the card board box and its contents, especially the Espinoza mutilated currency, are subject to seizure and forfeiture.  Therefore, I respectfully request that a warrant issue to seize what I have described as the Espinoza currency, including the cardboard box in which it came, and that box's contents, including any and all items in the box, whether currency or not, and whatever its condition.

FURTHER THAN THIS, affiant sayeth not.

_____
Joshua W. DeLay, Special Agent
United States Department of Homeland Security
Immigration and Customs Enforcement

\* \* \* \* \* \* \*

Subscribed to and sworn before me on this _____ day of March 2008.


_____
UNITED STATES MAGISTRATE JUDGE